IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STERICYCLE, INC., a Delaware corporation,

     Plaintiff,

v.

ALLIED HOLDINGS GROUP, LLC, a
Delaware limited liability company,

     Defendant.

No.  1:23-cv-1322

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

For its Complaint for Injunctive Relief and Damages against Defendant, Allied Holdings Group, LLC ("Allied"), Plaintiff, Stericycle, Inc. ("Stericycle"), states as follows:

## NATURE OF THE ACTION

1.     Allied is a direct competitor of Stericycle that has recently resorted to unfair and deceptive business tactics to illegally poach Stericycle's customers. As alleged herein, Allied personnel are contacting Stericycle's customers and falsely representing themselves as being affiliated with Stericycle in order to make a connection, and then attempting to convince those customers to cancel their contracts with Stericycle and enter into contracts with Allied.

2.     This is not the first time Allied personnel have attempted to pass themselves off as being affiliated with an entity other than Allied, likewise in an effort to compete unfairly with Stericycle. In October 2022, a representative of Allied contacted Stericycle and misrepresented that he was associated with a customer of Stericycle, proceeding to inquire of Stericycle as to current contract terms and then demanding that Stericycle pause all services to the customer. The customer then disclosed to Stericycle that the person who contacted Stericycle was actually

employed by Allied. When confronted with this wrongful conduct, counsel for Allied provided written assurance that communications by Allied personnel would be "carried out in an appropriate matter", and on the basis of such assurance, Stericycle refrained from taking legal action. That assurance turned out to be hollow, however, given Allied's recent conduct as alleged in Paragraph 1.

3.      Stericycle thus seeks temporary, preliminary and permanent injunctive relief to stop Allied from engaging in additional wrongful conduct. Stericycle also seeks damages for the losses it has sustained as a result of Allied's wrongful conduct to date.

4.      By this action, Stericycle brings claims for (a) violation of Section 43 of the Lanham Act (Count I); (b) violation of the Illinois Uniform Deceptive Trade Practices Act (Count II); (c) violation of the Illinois common law of unfair competition (Count III); (d) violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act (Count IV); (e) intentional interference with prospective economic advantage (Count V); (f) violation of the Illinois Trade Secrets Act (Count VI); (g) violation of the Defend Trade Secrets Act (Count VII); and (h) defamation *per se* (Count VIII).

## PARTIES, JURISDICTION AND VENUE

5.      Stericycle is a Delaware corporation with its principal place of business in Lake County, Illinois.

6.      Allied is a Delaware limited liability company with its principle place of business in Utah County, Utah. Allied's member is Matthew Dalton, a California citizen.

7.      Subject matter jurisdiction is proper under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(b), because this action includes claims arising under the laws of the United States (specifically, the Lanham Act and the Defend Trade Secrets Act) and asserts claims of unfair competition.

8.      Subject matter jurisdiction is also proper under 28 U.S.C. § 1332(a) because Stericycle and Allied are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

9.      This Court also has supplemental jurisdiction over the claims in the Complaint which arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a), because these state law claims are so related to the federal claim that they form part of the same case or controversy and derive from a common nucleus of operative facts.

10.     Allied is subject to specific personal jurisdiction in Illinois because Allied directed at least one phone call that is the basis for the allegations herein to Stericycle in Illinois, and the harm and/or injury caused by Allied's conduct as alleged herein occurred in Illinois.

11.     On information and belief, Allied is also subject to general personal jurisdiction in Illinois because it continuously and systematically does business in Illinois.

12.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2)-(3) because a substantial portion of the events complained of herein took place in this Judicial District and the State of Illinois.  Allied directly targets its commercial activities towards consumers located in this Judicial District (as well as the State of Illinois and throughout the United States) and the harm complained of in this action was directed to and incurred by Stericycle in Illinois.

## BACKGROUND FACTS

### —Stericycle's Business—

13.     Stericycle is an industry leader in the field of medical and other waste management services.  Among other things, Stericycle collects, treats and disposes of medical waste, hazardous waste and other regulated waste for customers of all sizes in the healthcare and related industries, including hospitals, medical and dental offices, laboratories, and other customers.  Stericycle's full-service programs help protect its customers and its employees

3

against potential liabilities and injuries associated with the handling, transportation and disposal of regulated waste. Through its Shred-It brand, Stericycle also provides secure information destruction services and solutions via customized information protection plans on both one-off and recurring bases for its customers.

—**Stericycle's Customer Relationships**—

14. Stericycle's continued business success depends on its customer relationships. Stericycle has expended considerable time, effort and money in initiating, developing and maintaining its customer relationships in order to preserve its competitive advantage. Stericycle often provides regulated waste disposal services to its customers pursuant to multi-year term contracts. Many of Stericycle's customers are businesses that need a signed contract in place with a service provider such as Stericycle in order to comply with certain government regulations. In 2022, Stericycle provided regulated waste disposal services to approximately 148,000 U.S. customers, about 90% of which were long-term customers with multiyear contracts or purchase orders with Stericycle. Those long-term customers accounted for approximately 90% percent of Stericycle's overall U.S. revenue in the regulated waste disposal sector of its business. Stericycle continually invests in its equipment, systems and processes in order to meet its customers' needs.

15. Stericycle does not publicly disclose its customers' names except for a limited number of customers for marketing purposes with prior written authority of the customer.[1] Stericycle also maintains as confidential the terms and conditions of Stericycle's contracts with its customers. Stericycle maintains such confidentiality through non-disclosure agreements or provisions that it requires relevant personnel to execute in connection with their employment

---

[1] Certain government customers that are not at issue make their contract terms publicly available.

with Stericycle. In addition, information as to customer contract terms and conditions is available internally at Stericycle only on a need-to-know basis.

16.     Through all of these efforts, Stericycle has developed a strong reputation in the marketplace and has engendered substantial goodwill with its customers. These continuing efforts and this goodwill are critical to Stericycle's success, and they result in Stericycle gaining repeat business from its established customer relationships.

## —Stericycle's Confidential Information—

17.     In order to conduct its regulated waste disposal business and meet its customers' needs, Stericycle has developed and relies upon certain confidential information ("Confidential Information"), including, but not limited to, the following:

(a)     information relating to Stericycle's business methods and practices, such as market research data; competitor information and data; consumer studies; product initiatives and strategies; sales projections; gross margin and revenue information; profit and loss information; marketing and business plans; business strategies; branding strategies; mergers and acquisitions information; operating information and other non-published pricing, financial and sales data; and

(b)     information relating to Stericycle's customers, such as customer names, addresses, telephone numbers, emails and key contacts; customer contracts; customer orders and requirements; and financial information pertaining to customer accounts, including billing statements and historic revenues.

## —Stericycle's Trade Secrets—

18.     Stericycle also has developed certain trade secrets ("Trade Secrets"), upon which Stericycle relies in order to conduct its regulated waste disposal business and meet its customers' needs, including, but not limited to, compilations of information pertaining to Stericycle's customers, such as compilations of customer contracts and the terms and conditions thereof, compilations of current and historic pricing terms, formulas and strategies, compilation lists of

former, existing and prospective customers, compilations of customer purchase habits, orders, preferences and requirements; compilations of current and past proposals, presentations, bids and quotes, and compilations of key contact persons of former, existing and prospective customers.

**—Stericycle's Efforts to Protect Its Confidential Information and Trade Secrets—**

19.    Stericycle's Confidential Information and Trade Secrets are sufficiently secret to derive economic value because they are not generally known to the industry or publicly available, and they are a by-product of countless hours and expense on the part of Stericycle spanning more than four (4) years.  As a result, Stericycle's Confidential Information and Trade Secrets afford Stericycle an advantage over its competitors.

20.    Stericycle has taken reasonable measures to maintain the secrecy and confidentiality of its Confidential Information and Trade Secrets.  These measures include the following:

(a)    implementing employment, restrictive covenant and other agreements, which describe Stericycle's Confidential Information and Trade Secrets and impose nondisclosure obligations;

(b)    implementing policies and training employees on the importance of maintaining the confidentiality of Stericycle's Confidential Information and Trade Secrets;

(c)    disclosing Stericycle's Confidential Information and Trade Secrets only to those persons who need to know him in order to perform his work for Stericycle;

(d)    controlling access to Stericycle's facilities, which remain locked and secured during nonbusiness hours, as well as locking secure areas, restricting access to designated employees through the use of keys issued by Stericycle, and maintaining 24-hour video surveillance of the facilities;

(e)    maintaining Stericycle's Confidential Information and Trade Secrets on password-protected computer systems with login procedures that restrict access to Stericycle personnel on a strictly need-to-know basis;

(f)      storing digital copies of documents containing Stericycle's Confidential Information and/or Trade Secrets on secure internal sites with controlled access (e.g., SharePoint or Microsoft Teams sites);

(g)      immediately following an employee's termination, confiscating all Stericycle-owned property, including all Confidential Information and Trade Secrets, and suspending that employee's Stericycle accounts and resetting related passwords;

(h)      conducting exit interviews (when possible) and reminding departing employees of his obligations to return all of Stericycle's Confidential Information and Trade Secrets and to abide by his nondisclosure covenants; and

(i)      investigating and taking prompt action whenever Stericycle learns that someone is wrongly using Stericycle's Confidential Information and/or Trade Secrets, in order to attempt to stop such use.

21.      Stericycle's Confidential Information and Trade Secrets could not be discovered, developed or compiled by a competitor without the investment of substantial sums of money over a period of years. If Stericycle's Confidential Information or Trade Secrets were to be disclosed to and/or used by a competitor, that competitor would be able to unfairly compete against Stericycle in the medical waste and secure information destruction industries. Among other things, such disclosure and/or use would enable a competitor to yield competing products and services, and to solicit Stericycle's customers and employees, without having to spend the time, effort, expense and resources that Stericycle has expended over the years.

**—Allied's Business and Employment of Former Stericycle Employees—**

22.      Allied is a direct competitor of Stericycle in connection with various services, including medical waste disposal and secure information destruction services.

23.      Several former employees of Stericycle now work for Allied, having left Stericycle to join Allied over the past several years (collectively, the "Former Stericycle Employees").

24.     During their employment with Stericycle, the Former Stericycle Employees had access to and became familiar with Stericycle's Confidential Information and Trade Secrets. This information was stored in paper form and electronically on Stericycle network drives, and on the Former Stericycle Employees' Stericycle-issued laptops.

25.     During their employment with Stericycle, the Former Stericycle Employees had frequent contact with, and developed close working relationships with, Stericycle's customers. The Former Stericycle Employees had knowledge and information about the terms and conditions of Stericycle's contracts with those customers. Stericycle paid the Former Stericycle Employees as its agents to initiate, maintain, and develop those relationships.

—Allied's Misconduct—

26.     With the knowledge and assistance of the Former Stericycle Employees, Allied has recently begun a campaign of unfair competition designed to steal Stericycle customers by deceiving those customers as to Allied's affiliation or association with Stericycle, and by deceiving Stericycle as to Allied's affiliation or association with Stericycle's customers.

27.     On or about October 6, 2022, Craig Jackson, an employee of Allied, contacted Stericycle and falsely held himself out to be an employee of one of Stericycle's customers, "Customer A." Mr. Jackson demanded that Stericycle cancel Customer A's account with Stericycle based on a false contention that Stericycle's agreement with Customer A was signed by an employee who lacked authority to bind Customer A. Mr. Jackson further indicated that Customer A had signed with another local vendor, asked Stericycle to "pause all services" and stated, "I don't want you coming to our location again, at this point, right now." Mr. Jackson stated that, "internally, I need to figure out what's going on on the contract side of things."

28.     After the call, the Stericycle employee who was communicating with Mr. Jackson attempted to email Customer A's contract with Stericycle to Mr. Jackson utilizing Customer A's email domain, but the email bounced back as undeliverable.

29.     The following day, on October 7, 2022, Stericycle received an email from the Controller at Customer A, who also requested to cancel Customer A's account with Stericycle. Stericycle's representative mentioned the same request had already been made by Craig Jackson, and the Controller for Customer A informed Stericycle that Craig Jackson is not an employee of Customer A, but rather is employed by Allied, the vendor to which Customer A intended to transfer its business.

30.     On October 25, 2022, through counsel, Stericycle informed Allied of Mr. Jackson's false representations. Allied responded through counsel on November 1, 2022. Allied acknowledged Mr. Jackson's improper conduct, thanked Stericycle for bringing it to Allied's attention, and assured Stericycle that it would "address[] this with its staff to ensure that communications made on behalf of Allied's clients are carried out in the appropriate manner."

31.     Stericycle initially believed that Allied was sincere in those promises and its unlawful behavior would stop. But Allied's promises were false.

32.     On or about February 16, 2023, another of Stericycle's customers, "Customer B," received a voicemail from Alex Morgan stating that he has "important information about your Stericycle medical waste contract" and requesting a return call.

33.     On or about the same date, a different Stericycle Customer, "Customer C," received a substantially similar voicemail from Mr. Morgan.

34.     There is no one employed by Stericycle named Alex Morgan who has any connection to either Customer B or Customer C.

35. Customer B and Customer C each informed Stericycle of the call and inquired as whether the caller was affiliated with Stericycle.

36. Seeking clarity, one of Stericycle's employees called Mr. Morgan back at the number he provided and asked if he was affiliated with Stericycle. Mr. Morgan confirmed he was not but, believing that the caller was from one of Stericycle's customers, informed her that Allied could provide waste removal services for 30-40% less than Stericycle because Stericycle "over-charges and gouges customers."

37. Customer B and Customer C are large, long-term customers of Stericycle, collectively responsible for millions in annual fees to Stericycle.

38. It is not publicly known that Stericycle has contracts with Customer A, Customer B, or Customer C.

39. On information and belief, the Former Stericycle Employees are using Stericycle's Confidential Information and/or Trade Secrets, including without limitation the identities and contact information of Stericycle's customers and Stericycle's pricing information, to facilitate Allied's unfair and deceptive business practices described above.

40. On information and belief, after obtaining an audience with Stericycle's customers under these false pretenses, Allied offers to pay the fees associated with an early termination of the customers' contracts with Stericycle or otherwise buy the customers out of those term agreements, so that the customers will move their business to Allied.

**COUNT I**
**VIOLATION OF 15 U.S.C. § 1125(a)(1)**

41. Stericycle incorporates its allegations in paragraphs 1 through 40 as if fully set forth in this Paragraph.

42. Section 43(a) of the Lanham Act imposes liability upon a defendant who "on or in connection with any goods or services ... uses in commerce any ... false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact, which is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person . . . ." 15 U.S.C. § 1125(a)(1).

43. As described above, Allied is contacting Stericycle's customers in connection with the solicitation and provision of its services and willfully and deliberately attempting to deceive those customers as to Allied's affiliation, connection, or association with Stericycle.

44. By falsely holding itself out as being affiliated with Stericycle, Allied has willfully and deliberately created and is creating customer confusion as to the affiliation, connection, or association of Allied's services and sales representatives with Stericycle.

45. Also as described above, Allied has contacted Stericycle and willfully and deliberately attempted to deceive Stericycle as to Allied's affiliation, connection, or association with one or more customers of Stericycle.

46. Allied's conduct is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

47. These violations have proximately caused and, unless restrained and enjoined, will continue to cause Stericycle severe, immediate and irreparable harm, damage and injury for which Stericycle has no adequate remedy at law.

48. On information and belief, Allied has profited and been unjustly enriched by revenue from the customers it otherwise would not have obtained but for their unlawful conduct.

WHEREFORE, Stericycle respectfully requests that the Court enter an Order granting judgment in favor of Stericycle and against Allied on Count I and ordering the following relief:

(a)     the issuance of temporary, preliminary and permanent injunctive relief enjoining Allied, and every person and entity acting in concert with it (including, without limitation, the Former Stericycle Employees), from directly or indirectly:

  (i)     contacting Stericycle or its customers and falsely claiming or inferring any affiliation, connection, or association with Stericycle or its services, or any affiliation, connection, or association with any customer of Stericycle; and

  (ii)    using Stericycle's Confidential Information and Trade Secrets for their own benefit;

(b)     the issuance of a mandatory injunction requiring Allied to account for and return to Stericycle any and all Stericycle property, including Stericycle's Confidential Information and Trade Secrets, in Allied's possession, custody, or control;

(c)     the award of compensatory damages in an amount to be determined at trial;

(d)     the award of Stericycle's attorneys' fees and costs;

(e)     the award of pre- and post-judgment interest; and

(f)     such further relief as the Court deems just and proper.

## COUNT II
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## 815 ILCS § 510/1, *et seq.*

49.     Stericycle incorporates its allegations in paragraphs 1 through 40 as if fully set forth in this Paragraph.

50.     Allied has engaged in acts violating Illinois law including, but not limited to, passing off their services as those of Stericycle, causing a likelihood of confusion and/or misunderstanding as to the source of their services, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with Stericycle or with a customer of Stericycle, representing that they speak on behalf of Stericycle when they do not,

and engaging in other conduct that creates a likelihood of confusion or misunderstanding among the public.

51.     Allied's conduct constitutes a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510, *et seq.*

52.     These violations have proximately caused and, unless restrained and enjoined, will continue to cause Stericycle severe, immediate and irreparable harm, damage and injury for which Stericycle has no adequate remedy at law.

53.     On information and belief, Allied has profited and been unjustly enriched by revenue from the customers it otherwise would not have obtained but for their unlawful conduct.

WHEREFORE, Stericycle respectfully requests that the Court enter an Order granting judgment in favor of Stericycle and against Allied on Count II and ordering the following relief:

(a)     the issuance of temporary, preliminary and permanent injunctive relief enjoining Allied, and every person and entity acting in concert with it (including, without limitation, the Former Stericycle Employees), from directly or indirectly:

(i)     contacting Stericycle or its customers and falsely claiming or inferring any affiliation, connection, or association with Stericycle or its services, or any affiliation, connection, or association with any customer of Stericycle; and

(ii)     using Stericycle's Confidential Information and Trade Secrets for their own benefit;

(b)     the issuance of a mandatory injunction requiring Allied to account for and return to Stericycle any and all Stericycle property, including Stericycle's Confidential Information and Trade Secrets, in Allied's possession, custody, or control;

(c)     the award of compensatory damages in an amount to be determined at trial;

(d)     the award of Stericycle's attorneys' fees and costs;

(e)     the award of pre- and post-judgment interest; and

(f)     such further relief as the Court deems just and proper.

## COUNT III
## ILLINOIS COMMON LAW UNFAIR COMPETITION

54.     Stericycle incorporates its allegations in paragraphs 1 through 40 as if fully set forth in this Paragraph.

55.     This claim is for unfair competition and deceptive trade practices in violation of the common law of the State of Illinois.

56.     Allied is passing off its personnel and services as those authorized by, provided by, sold by, and/or affiliated with Stericycle, thereby causing harm to the reputation and goodwill of Stericycle.

57.     Allied's conduct has been willful and deliberate.

58.     On information and belief, Allied has profited and been unjustly enriched by revenue from the customers it otherwise would not have obtained but for its unlawful conduct and that of the Former Stericycle Employees.

59.     Stericycle has been damaged by Allied's passing off and unfair or deceptive acts and practices, including in holding itself out as being associated with one or more customers of Stericycle.

60.     These violations have proximately caused and, unless restrained and enjoined, will continue to cause Stericycle severe, immediate and irreparable harm, damage and injury for which Stericycle has no adequate remedy at law.

61.     As a result of Allied's deceptive and unfair trade practices, Stericycle is entitled to an award of its damages, including enhanced damages, costs, and punitive damages, as well as injunctive and equitable relief.

WHEREFORE, Stericycle respectfully requests that the Court enter an Order granting judgment in favor of Stericycle and against Allied on Count III and ordering the following relief:

(a)     the issuance of temporary, preliminary and permanent injunctive relief enjoining Allied, and every person and entity acting in concert with it (including, without limitation, the Former Stericycle Employees), from directly or indirectly:

(i)     contacting Stericycle or its customers and falsely claiming or inferring any affiliation, connection, or association with Stericycle or its services, or any affiliation, connection, or association with any customer of Stericycle; and

(ii)     using Stericycle's Confidential Information and Trade Secrets for their own benefit;

(b)     the issuance of a mandatory injunction requiring Allied to account for and return to Stericycle any and all Stericycle property, including Stericycle's Confidential Information and Trade Secrets, in Allied's possession, custody, or control;

(c)     the award of compensatory damages in an amount to be determined at trial;

(d)     the award of Stericycle's costs;

(e)     the award of pre- and post-judgment interest; and

(f)     such further relief as the Court deems just and proper.

## COUNT IV
## ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICE ACT
## 815 ILCS § 505/2

62.     Stericycle incorporates its allegations in paragraphs 1 through 40 as if fully set forth in this Paragraph.

63.     Allied has undertaken a deceptive act or practice by falsely passing off their services as those of Stericycle, causing a likelihood of confusion and/or misunderstanding as to the source of their services, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with Stericycle, representing that they speak on behalf of Stericycle when they do not, and engaging in other conduct that creates a likelihood of confusion or misunderstanding among the public.

64.     Allied conduct also constitutes an unfair business practice designed to misrepresent Allied's services as those of Stericycle, causing a likelihood of confusion and/or misunderstanding as to the source of their services, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with Stericycle, representing that they speak on behalf of Stericycle when they do not, and engaging in other conduct that creates a likelihood of confusion or misunderstanding among the public.

65.     Allied intended for Stericycle's customers to rely on its deceptive and unfair misrepresentations in order to gain an audience with those customers before attempting to convert them to Allied customers.

66.     Allied's deceptive and unfair acts and practices occurred in the course of trade and commerce – specifically, in the solicitation and provision of medical waste removal services.

67.     Stericycle has been damaged by Allied's deceptive and unfair acts and practices.

68.     Stericycle's damages were proximately caused by Allied's deceptive and unfair acts and practices.

69.     These violations have proximately caused and, unless restrained and enjoined, will continue to cause Stericycle severe, immediate and irreparable harm, damage and injury for which Stericycle has no adequate remedy at law.

WHEREFORE, Stericycle respectfully requests that the Court enter an Order granting judgment in favor of Stericycle and against Allied on Count IV and ordering the following relief:

(a)     the issuance of temporary, preliminary and permanent injunctive relief enjoining Allied, and every person and entity acting in concert with it (including, without limitation, the Former Stericycle Employees), from directly or indirectly:

(i)     contacting Stericycle or its customers and falsely claiming or inferring any affiliation, connection, or association with Stericycle or its services, or any affiliation, connection, or association with any customer of Stericycle; and

      (ii)     using Stericycle's Confidential Information and Trade Secrets for their own benefit;

(b)    the issuance of a mandatory injunction requiring Allied to account for and return to Stericycle any and all Stericycle property, including Stericycle's Confidential Information and Trade Secrets, in Allied's possession, custody, or control;

(c)    the award of compensatory damages in an amount to be determined at trial;

(d)    the award of Stericycle's attorneys' fees and costs;

(e)    the award of pre- and post-judgment interest; and

(f)    such further relief as the Court deems just and proper.

**COUNT V**
**INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

70.    Stericycle incorporates its allegations in paragraphs 1 through 40 as if fully set forth in this Paragraph.

71.    Stericycle had a reasonable expectation of continuing its business relationship with Customer A.

72.    On information and belief, Allied and the Former Stericycle Employees had knowledge or awareness of Stericycle's expectation of continuing its business relationship with Customer A.

73.    Allied intentionally interfered with Stericycle's reasonable expectation of continuing its valid business relationship with Customer A when Allied, through its authorized agents or representatives, contacted Customer A about switching its account to Allied and then contacted Stericycle and falsely, deceptively, and unfairly represented an association, connection, or affiliation with Customer A for the purposes of terminating Customer A's relationship with Stericycle. By doing so, Allied induced or caused Stericycle's business relationship with Customer A to terminate.

74.     As a result of Allied's intentional interference, Stericycle sustained damages including significant financial losses.

WHEREFORE, Stericycle respectfully requests that the Court enter an Order granting judgment in favor of Stericycle and against Allied on Count V and ordering the following relief:

(a)     the issuance of temporary, preliminary and permanent injunctive relief enjoining Allied, and every person and entity acting in concert with it (including, without limitation, the Former Stericycle Employees), from directly or indirectly:

(i)     contacting Stericycle or its customers and falsely claiming or inferring any affiliation, connection, or association with Stericycle or its services, or any affiliation, connection, or association with any customer of Stericycle; and

(ii)    using Stericycle's Confidential Information and Trade Secrets for their own benefit;

(b)     the issuance of a mandatory injunction requiring Allied to account for and return to Stericycle any and all Stericycle property, including Stericycle's Confidential Information and Trade Secrets, in Allied's possession, custody, or control;

(c)     the award of compensatory damages in an amount to be determined at trial;

(d)     the award of punitive damages in an amount to be determined at trial;

(e)     the award of Stericycle's costs;

(f)     the award of pre- and post-judgment interest; and

(g)     such further relief as the Court deems just and proper.

## COUNT VI
## VIOLATION OF THE ILLINOIS TRADE SECRETS ACT, 765 ILCS 1065/1, *et seq.*

75.     Stericycle incorporates its allegations in paragraphs 1 through 40 as if fully set forth in this Paragraph.

76.     Stericycle's Trade Secrets are confidential to Stericycle and constitute protectable trade secrets under the Illinois Trade Secrets Act, 765 ILCS 1065/1, *et seq.*

77.    Stericycle has taken reasonable efforts to protect and maintain the secrecy and confidentiality of its Trade Secrets.

78.    Stericycle's Trade Secrets are not generally known in the industry or to the general public, and his secrecy confers substantial economic advantage and benefit to Stericycle. Knowledge of this information would also confer a substantial economic benefit to Stericycle's competitors, including Allied.

79.    The circumstances of the Former Stericycle Employees' employment with Stericycle gave rise to fiduciary duties and/or contractual obligations to maintain the secrecy of Stericycle's Trade Secrets and to strictly limit the use of such Trade Secrets to Stericycle business activities and for Stericycle's exclusive benefit.

80.    Allied, through improper means and without authorization, either directly or indirectly misappropriated, misused and/or disclosed Stericycle's Trade Secrets to and for the benefit of Allied.

81.    Moreover, the Former Stericycle Employees are performing and will continue to perform work for Allied that is so similar to their work at Stericycle that it will not be possible for them to discharge those responsibilities without disclosing, using and/or relying upon their knowledge of Stericycle's Trade Secrets for the benefit of Allied.  Thus, not only have the Former Stericycle Employees already induced, disclosed, used and/or relied upon Stericycle Trade Secrets for the benefit of themselves and Allied, it is inevitable that they will continue to do so unless they are restrained and enjoined from continuing to do so.

82.    As a direct and proximate result of Allied's deliberate, willful and malicious misappropriation of Stericycle's Trade Secrets, Stericycle has sustained and will continue to sustain severe, immediate and irreparable harm, damage and injury to the value of its Trade

Secrets and competitive advantage, which Stericycle has expended significant time, effort and money to secure.

WHEREFORE, Stericycle respectfully requests that the Court enter an Order granting judgment in favor of Stericycle and against Allied on Count VI and ordering the following relief:

>   (a)   the issuance of temporary, preliminary and permanent injunctive relief enjoining Allied, and every person and entity acting in concert with it (including, without limitation, the Former Stericycle Employees), from directly or indirectly:

>>   (i)   contacting Stericycle or its customers and falsely claiming or inferring any affiliation, connection, or association with Stericycle or its services, or any affiliation, connection, or association with any customer of Stericycle; and

>>   (ii)   using Stericycle's Confidential Information and Trade Secrets for their own benefit;

>   (b)   the issuance of a mandatory injunction requiring Allied to account for and return to Stericycle any and all Stericycle property, including Stericycle's Confidential Information and Trade Secrets, in Allied's possession, custody, or control;

>   (c)   the award of compensatory damages in an amount to be determined at trial;

>   (c)   exemplary and other damages pursuant to section 765 ILCS 1065/4 of the Illinois Trade Secrets Act; and

>   (d)   such other relief as the Court deems just and proper.

## COUNT VII
## VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836(b)

83.   Stericycle incorporates its allegations in paragraphs 1 through 40 as if fully set forth in this Paragraph.

84.   Stericycle's Trade Secrets are proprietary and confidential to Stericycle, and they constitute protectable trade secrets under the Defend Trade Secrets Act. *See* 18 U.S.C. § 1839(3).

85. Stericycle's products and services (to which its Trade Secrets relate) are used in interstate commerce.

86. Stericycle has taken reasonable efforts to protect and maintain the secrecy and confidentiality of its Trade Secrets.

87. Stericycle's Trade Secrets are not generally known in the industry or to the general public, and their secrecy confers substantial economic advantage and benefit to Stericycle. Knowledge of this information would also confer a substantial economic benefit to Stericycle's competitors, including Allied.

88. The circumstances of the Former Stericycle Employees' respective employment with Stericycle gave rise to fiduciary duties and obligations to maintain the secrecy of Stericycle's Trade Secrets and to strictly limit the use of such Trade Secrets to Stericycle business activities and for Stericycle's exclusive benefit.

89. Allied and the Former Stericycle Employees, through improper means and without authorization, either directly or indirectly misappropriated, misused, and/or disclosed Stericycle's Trade Secrets to and for the benefit of themselves.

90. As a direct and proximate result of Allied's and the Former Stericycle Employees' deliberate, willful, and malicious misappropriation of Stericycle's Trade Secrets, Stericycle has sustained and will continue to sustain severe, immediate, and irreparable harm, damage, and injury to the value of its Trade Secrets and its competitive advantage, which Stericycle has expended significant, time, effort, and money to secure.

WHEREFORE, Stericycle respectfully requests that the Court enter an Order granting judgment in favor of Stericycle and against Allied on Count VII and ordering the following relief:

(a)     the issuance of temporary, preliminary and permanent injunctive relief enjoining Allied, and every person and entity acting in concert with it (including, without limitation, the Former Stericycle Employees), from directly or indirectly:

(i)     contacting Stericycle or its customers and falsely claiming or inferring any affiliation, connection, or association with Stericycle or its services, or any affiliation, connection, or association with any customer of Stericycle; and

(ii)     using Stericycle's Confidential Information and Trade Secrets for their own benefit;

(b)     the issuance of a mandatory injunction requiring Allied to account for and return to Stericycle any and all Stericycle property, including Stericycle's Confidential Information and Trade Secrets, in Allied's possession, custody, or control;

(c)     the award of compensatory damages in an amount to be determined at trial;

(d)     exemplary and other damages pursuant to section 18 U.S.C. § 1836(b)(3)(C);

(e)     Stericycle's costs and attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D); and

(f)     such other relief as the Court deems just and proper.

## COUNT VIII
## DEFAMATION *PER SE*

91.     Stericycle incorporates its allegations in paragraphs 1 through 40 as if fully set forth in this Paragraph.

92.     On information and belief, Allied, through its authorized agents, published statements to Stericycle's customers that Stericycle over-charges and gouges customers.

93.     Allied's statements impute a lack of ability or otherwise prejudice Stericycle in its business.

94.     Allied's statements that Stericycle over-charges and gouges customers were false and Allied knew them to be false.

95.     Allied's statement is not reasonably capable of an innocent construction.

96.     Allied's statement is not a protected expression of opinion.

97.     Allied's statements are not privileged in any matter.

98.     Allied's conduct in making the aforesaid defamatory statements was outrageous, willful, wanton, and self-interested.

99.     As a result of Allied's defamatory statements, Stericycle sustained damages including significant financial losses.

WHEREFORE, Stericycle respectfully requests that the Court enter an Order granting judgment in favor of Stericycle and against Allied on Count VIII and ordering the following relief:

(a)     the issuance of temporary, preliminary and permanent injunctive relief enjoining Allied, and every person and entity acting in concert with it (including, without limitation, the Former Stericycle Employees), from directly or indirectly making any defamatory statements of or about Stericycle;

(b)     the award of compensatory damages in an amount to be determined at trial;

(c)     the award of punitive damages in an amount to be determined at trial;

(d)     the award of Stericycle's costs;

(e)     the award of pre- and post-judgment interest; and

(f)     such further relief as the Court deems just and proper.

**JURY DEMAND**
**(All Claims)**

Stericycle demands trial by jury on all claims for damages so triable.

Dated:  March 3, 2023

Respectfully submitted,

STERICYCLE, INC.

By:    s/ James V. Garvey
 _____
                        One of Its Attorneys

James V. Garvey
Jonathon P. Reinisch
Vedder Price P.C.
222 North LaSalle Street
Suite 2600
Chicago, Illinois 60601
jgarvey@vedderprice.com
jreinisch@vedderprice.com
T:  +1 312 609 7500